other times previous thereto, was guilty of habitual drunkenness such as to endanger the life and health of Joseph Sindowski and to render co-habitation and living unsafe with her."

BOYCE, J., delivering the opinion of the court:

Our statute (*Laws* 1906, *c.* 221) regulating annulment of marriage and divorce enumerates the causes for divorce, whether *a vinculo matrimonii* or *a mensa et thoro* in simplest terms and phrases. The court has frequently urged that the cause or causes for divorce, relied upon, be averred in the petition in the exact language of the statute. And that the conditions as to residence as provided by *section* 9 of the act be averred so as to meet fully the requirements of said section. These are vital matters, and there should be no uncertainty in the language employed. There will be none if the *cause* for divorce and the conditions of *residence* are alleged in the language of the statute.

We regret to say that the averments in this petition are very defective and the petition should be dismissed.

At this point counsel for the plaintiff asked leave to amend the petition.

BOYCE, J., continuing:

Leave will not be granted to amend petitions in divorce cases. The petition is dismissed.

———— · ————

THE SECURITY TRUST AND SAFE DEPOSIT COMPANY, Assignee, *vs.* JOHN J. GALLAGHER.

MORTGAGES—FORECLOSURE SALE—MOTION TO VACATE—INADEQUATE CONSIDERATION.

Evidence in an action to set aside a foreclosure sale upon the ground of gross inadequacy of consideration *held* to require that the sale be set aside.

(*May* 9, 1911.)

Judges BOYCE and WOOLLEY sitting.

*Daniel O. Hastings* for the petitioner.

*Harry Emmons* for the defendant.

Superior Court, New Castle County, May Term, 1911.

PETITION for rule to show cause (No. 4, May Term, 1911).

Rule to show cause wherefore the sale of lands of John J. Gallagher, by the sheriff to Benjamin J. Schwartz for the sum of eleven thousand five hundred dollars, and returned to the present term of court, in the above stated case, should not be set aside, upon the grounds of gross inadequacy of price for which the property was sold.

The property consisted of a certain lot located at the northeast corner of Fourteenth and Market streets, in the City of Wilmington, on which there was a three story brick apartment building with drug store on first floor.

The testimony of the several witnesses for the petitioner variously estimated the property to be worth at forced, cash sale from sixteen to twenty-five thousand dollars; those called for the purchaser considered it worth from twelve to eighteen thousand dollars.

The sheriff's deputy, who made the sale, testified that there were only two bids—one by Col. Nields and the other by Mr. Schwartz, the purchaser,—"that there was not a fair attendance at the sale, and there seemed to be some doubt whether this was to be a sale."

*Francis E. Gallagher*, brother of the petitioner, testified that he thought arrangements had been made by Mr. Elliott to have the property bid in; that he would have attended the sale but for such information, and was prepared to bid and pay twenty-two thousand dollars for the property, if necessary, which he considered safely worth twenty-five thousand dollars.

*George A. Elliott* testified in part:

I was not seen by Mr. Francis E. Gallagher until the evening of the day before the sale, and early in the morning of the day of the sale—and unfortunately I had a trustee sale at Smyrna that morning, and was unable to give the matter my personal attention. He came to me to find out if I would not do something to protect

the property from the sale, and avoid the foreclosure; and if not, if I would not buy it in. I told him that it would be impossible for me at that late hour to make any definite arrangements but that I would go up to Colonel Nields' office—I only had a few minutes then before train time—and see what arrangements could be made. After talking the matter over with Colonel Nields, I told him that I wanted to buy the property or make some arrangements by which the property need not be foreclosed on a small mortgage. But it was too late to stay the sale. So I asked the Colonel if he would bid the property in, and as soon as I came back I would make arrangements by which the defendant in this suit could satisfy the claim of the Security Trust and Safe Deposit Company. Unfortunately, I did not, in my hurry, fix the amount of the bid to be made. The understanding in my mind was he would buy the property. I then went down and told Mr. Francis E. Gallagher, who was representing the defendant in the case, that Colonel Nields would buy the property in, and I rushed off to the train, * * *. I want to say that in this matter I was acting simply as an acquaintance and friend of Mr. John Gallagher, and I went to Colonel Nields to see if he would bid it in. Unfortunately, I did not tell him to bid it up to, say, twenty thousand dollars. I ought to have fixed that amount.

By MR. HASTINGS:

Q. If this sale should be set aside would you be willing to make arrangements so that it would not be necessary for the Security Trust and Safe Deposit Company to sell this property again in order to get their money?

A. I so stated a moment ago to the court.

*Benjamin Nields* testified in part:

On the morning of the sale Mr. Elliott came to me and we had the conversation that he has stated, with the exception that I understood in my mind that I was not to bid beyond the claim of the Security Trust and Safe Deposit Company. I certainly had that in mind, because there were other claims after that to which the money would go, and I said that I would bid on the property, ·

buy it in, and that I would be perfectly willing it should be returned to anybody they would name for the benefit of Mr. Gallagher; that the Trust Company did not want to make a cent out of it, and that he could have the property at whatever price it was bid in, my understanding being that it would not be bid above my claim of the Trust Company; and I did understand from what I heard from the deputy sheriff there would be no sale, and others had the impression that the sale would not be made. I got that from two or three persons. I do not know how that impression got out, but I think the impression had gone out in the community, and that Mr. Elliott had the same impression.

WOOLLEY, J.:—The court is of the opinion, with the evidence before us, that this sale should be set aside, and directs that the rule be made absolute.

———————·———————

FRANCIS THERESA GATTA, widow, vs. PHILADELPHIA, BALTIMORE AND WASHINGTON RAILROAD COMPANY, a corporation existing under the laws of the State of Delaware.

1. NEGLIGENCE—PRESUMPTIONS—BURDEN OF PROOF.

Ordinarily, there is no presumption of negligence, either on the part of the party injured or on the part of the defendant, from the mere fact that the injury occurred, but it is essential, to create a liability, that the plaintiff prove that the injury resulted from defendant's negligence and that the negligence of the person injured did not enter into the accident and was not the proximate cause thereof.

2. NEGLIGENCE—WHAT CONSTITUTES.

"Negligence" is the failure to observe, for the protection of the interests of another, that degree of care, prudence, and vigilance which the circumstances justly demand, whereby such other person suffers injury. It is the want of such care as a reasonably prudent and careful person would exercise under similar circumstances.

3. NEGLIGENCE—MUTUAL NEGLIGENCE.

Where, in an action for injuries, it appears that there has been negligence on the part of both plaintiff and defendant, and that each was operative at the time of the injury complained of, no recovery can be had, as the law will not measure the proportion of blame or negligence to be attributed to either party.